**In re WELLBUTRIN XL ANTITRUST LITIGATION.**

Civil Action No. 08–2433 (Indirect).

United States District Court,
E.D. Pennsylvania.

Dec. 22, 2010.

Richard W. Cohen (argued), Peter D. St. Phillip, Jr., Gerald Lawrence, Karen Iannace, Lowey Dannenberg Cohen & Hart, P.C., White Plains, New York, Kenneth A. Wexler, Amber M. Nesbitt, Justin N. Boley, Wexler Wallace LLP, Chicago, IL, for Indirect Purchaser Plaintiffs.

Craig S. Primis, Kirkland & Ellis LLP, Washington, DC, for Defendant Smith-Kline Beecham Corp. d/b/a GlaxoSmithKline.

Lawrence VanDyke, Gibson, Dunn & Crutcher LLP, Dallas, TX, for Defendants Biovail Corp., Biovail Laboratories, Inc., and Biovail Laboratories International SRL.

## MEMORANDUM

McLAUGHLIN, District Judge.

The plaintiffs are a group of indirect purchasers of Wellbutrin XL, a once-a-day antidepressant, who are suing the producers of Wellbutrin XL, Biovail Corp., Biovail Laboratories, Biovail Laboratories International (together, "Biovail"), and its distributors, SmithKline Beecham Corp. and GlaxoSmithKline PLC (together, "GSK"), for illegally conspiring to prevent generic versions of Wellbutrin XL, or buproprion hydrochloride, from entering the American market.

The plaintiffs have moved to amend their complaint to add state law antitrust claims under New York's Donnelly Act, N.Y. Gen. Bus. Law § 340, et seq., and the Illinois Antitrust Act ("IAA"), 740 Ill. Comp. Stat. 10/1, et seq. in light of Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., — U.S. ——, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010), which addressed the applicability of state law class action restrictions in federal court. The plaintiffs argue that the Illinois and New York restrictions on class actions are not applicable in federal court after Shady Grove because the restrictions conflict with Federal Rule of Civil Procedure 23 and are not "intertwined" with the state substantive rights. The defendants argue that amendment would be futile because the class action restrictions survive Shady Grove or in the alternative that amendment would

result in unfair prejudice. For the reasons stated below, the Court will grant in part and deny in part the motion to amend.

### I. Procedural History

On March 26, 2009, the plaintiffs filed their first amended complaint seeking treble damages for the defendants' alleged unlawful exclusion of generic versions of Wellbutrin XL through the filing of sham litigation. On July 30, 2009, the Court granted in part and denied in part the defendants' motions to dismiss and dismissed the plaintiffs' Illinois and New York claims. In re Wellbutrin XL Antitrust Litig., 260 F.R.D. 143, 162, 164–165 (E.D.Pa.2009). The Court dismissed the plaintiffs' Illinois consumer protection claims because the claims were "essentially antitrust claims in the guise of a claim under the Illinois consumer protection statute" and the parties did not dispute that the Illinois Antitrust Act would preclude relief. Id. at 162. The Court dismissed the plaintiffs' New York unfair competition claims because the plaintiffs were too remote from the allegedly deceptive acts to state a claim for relief under New York law. Id. at 165. The plaintiffs did not assert claims under either New York or Illinois antitrust law.

The case was placed in civil suspense on April 8, 2010 and removed from civil suspense on August 9, 2010. The instant motion to amend the plaintiffs' complaint was filed on September 14, 2010 (Docket No. 196). On December 14, 2010, the Court held oral argument for this motion. Following a telephone conference with counsel in this action and the direct purchaser action, the Court issued an amended scheduling order setting the defendants' opposition to the plaintiffs' motion for class certification to be due on or before January 28, 2011.

## II. *Legal Background*

This motion to amend arises in response to the recent Supreme Court case *Shady Grove. Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.,* —— U.S. ——, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010). In *Shady Grove,* the Supreme Court addressed whether Federal Rule of Civil Procedure 23, which governs class actions, conflicts with N.Y. Civ. Prac. Law § 901(b), which precludes class actions seeking "penalties" or statutory minimum damages.

In *Shady Grove,* the plaintiff had filed a putative class action in federal court to recover unpaid statutory interest under N.Y. Ins. Law Ann. § 5106(a). This action would have been barred in New York state courts. *Id.* at 1436. The United States Court of Appeals for the Second Circuit affirmed the District Court's dismissal and found that (1) Rule 23 and § 901(b) did not conflict and (2) that § 901(b) was "substantive" and must be applied by federal courts sitting in diversity. *Id.* at 1437. In a 5–4 decision, the Supreme Court reversed.

Justice Scalia delivered the opinion of the Court with respect to Parts I and II–A. The Court articulated a "familiar" two-step framework for its analysis. First, the Court inquired "whether Rule 23 answers the question in dispute." *Id.* at 1437. If it does, Rule 23 governs "unless it exceeds statutory authorization or Congress's rule-making power." *Id.* (citations omitted).

A majority of the Court agreed that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action" and the New York procedural statute "flatly contradict[ed]" Rule 23. *Id.* at 1438, 1441. The dissent concluded that there was "no unavoidable conflict between Rule 23 and § 901(b)" and instead would have interpreted the Federal Rules "with awareness of, and sensitivity to, important state regulatory policies." *Shady Grove,*

130 S.Ct. at 1460, 1469 (Ginsburg, J. dissenting).

Turning to the second inquiry, Justice Stevens wrote separately as to whether Rule 23 violates the Rules Enabling Act as applied to New York law. *See Shady Grove,* 130 S.Ct. at 1451 (Stevens, J. concurring in part and concurring in judgment). *See also Bearden v. Honeywell Int'l, Inc.,* No. 09–1035, 2010 WL 3239285, at *9, 2010 U.S. Dist. LEXIS 83996, at *26 (M.D.Tenn. Aug. 16, 2010) (noting that the majority fractured with respect to the Rules Enabling Act analysis); *McKinney v. Bayer Corp.,* No. 10–224, 744 F.Supp.2d 733, 744–45, 2010 WL 3834327, at *8, 2010 U.S. Dist. LEXIS 103516, at *23 (N.D.Ohio Sept. 30, 2010) (same).

Justice Scalia, writing for himself and three other justices, stated that the proper Rules Enabling Act test is to examine solely the federal rule and whether it "really regulate[s]" procedure. *Shady Grove Orthopedic Assocs.,* 130 S.Ct. at 1442 (Scalia, J.)

> What matters is what the rule itself *regulates:* If it governs only "the manner and the means" by which the litigants' rights are "enforced," it is valid; if it alters "the rules of decision by which [the] court will adjudicate [those] rights," it is not.

*Id.* (emphasis in original, citations omitted).

Justice Stevens disagreed that the "sole Enabling Act question is whether the federal rule 'really regulates procedure'. . . ." *Shady Grove,* 130 S.Ct. at 1452 (Stevens, J. concurring). Justice Stevens explained that the plurality's analysis ignored the limitation in the Rules Enabling Act that Federal Rules may not "abridge, enlarge or modify any substantive right. . . ." *Id.* (citing 28 U.S.C. § 2072).

In contrast with the plurality approach, Justice Stevens' approach to the Rules Enabling Act inquiry instructs courts to consider whether the federal rule would displace a state law that "is so intertwined" with the right or remedy that it defines the scope of the right. *Id.* ("A federal rule ... cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right."). Justice Stevens agreed with Justice Ginsburg's four-member dissent that "there are some state procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies." *Id.* at 1448. Justice Stevens, however, concluded that "this is not such a case." *Id.* at 1445.

As an initial matter, considering whether a rule abridges, enlarges, or modifies a state's rights or remedies is often a difficult inquiry because "one can often argue that the state rule was *really* some part of the State's definition of its rights or remedies." *Id.* at 1457 (emphasis in original). The bar for finding an Enabling Act problem is, in Justice Stevens' view, "a high one." *Id.* There must be "little doubt" that a federal rule would alter a state-created right. *Id.* Under this standard, Justice Stevens concluded that § 901(b) was not intertwined with New York's definition of substantive rights because the rule is in New York's procedural code, it is applicable to class actions brought under any source of law, and the legislative history was ambiguous.

First, Justice Stevens noted that the text of § 901(b) applies to claims based on any source of law, not just claims based on New York Law and there is no interpretation from New York courts to the contrary. Because of § 901(b)'s apparent applicability to other sources of law, "it is ... hard to see how § 901(b) ... serves the function of defining New York's rights or remedies." *Id.*

Justice Stevens also concluded that the legislative history did not "clearly describe a judgment that § 901(b) would operate as a limitation on New York's statutory damages." *Id.* at 1458. Although the legislative history cited by Justice Ginsburg in dissent supported the proposition that § 901(b) was drafted in response to fears that class actions for statutory penalties would lead to "annihilating punishment," Justice Stevens concluded that such statements are "not particularly strong evidence that § 901(b) serves to define who can obtain a statutory penalty or that certifying such a class would enlarge New York's remedy." *Id.* Moreover, some opponents of a broad-class action device argued that class actions were unnecessary to motivate litigation when statutory penalties apply. *Id.* (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 831 N.Y.S.2d 760, 863 N.E.2d 1012, 1015 (2007)). "It is not for us to dismiss the possibility that New York legislators shared in those beliefs and thus wanted to exclude the class vehicle when it appeared to be unnecessary." *Id.* at 1459.

The legislative history of § 901(b), according to Justice Stevens, thus "reveals a classically procedural calibration of making it easier to litigate claims in New York courts (under any source of law) only when it is necessary to do so, and not making it *too* easy when the class tool is not required." *Id.* (emphasis in original). Justice Stevens noted that because there are "two plausible competing narratives," the Court should respect the plain textual reading of § 901(b), a rule in New York's procedural code and applicable to class actions brought under any source of law,

and Congress' decision that Rule 23 applies in federal courts. *Id.* Rule 23 does not abridge, enlarge, or modify New York's substantive rights or remedies and therefore § 901(b) does not displace Rule 23. *Id.*

█ A question that arises is which approach is controlling on this Court. When no view of the Supreme Court achieves a majority, the Court's holding is the position taken by those who concurred "on the narrowest grounds." *Jackson v. Danberg,* 594 F.3d 210, 220 (3d Cir.2010) (quoting *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). However, "in cases where approaches differ, no particular standard is binding on an inferior court because none has received the support of a majority of the Supreme Court." *Berwind Corp. v. Comm'r of Soc. Sec.,* 307 F.3d 222, 234 (3d Cir.2002) (citations and quotations omitted). The United States Court of Appeals for the Third Circuit has explained that it is not always possible to discover a single standard "that legitimately constitutes the narrowest grounds for the decision." *See Rappa v. New Castle County,* 18 F.3d 1043, 1057 (3d Cir.1994). *See also King v. Palmer,* 950 F.2d 771, 781 (D.C.Cir.1991) (en banc) (explaining that an opinion is "narrower" only when one is "a logical subset of the other, broader opinions" and represents "a common denominator of the Court's reasoning"). Where there is no "narrower ground," the only binding aspect of a fragmented decision is the specific result. *Berwind Corp.,* 307 F.3d at 234 (citing *Anker Energy Corp. v. Consolidation Coal Co.,* 177 F.3d 161, 170 (3d Cir.1999)) (additional citation omitted).

█ The mere fact that Justice Stevens was the "fifth vote" does not by itself make his approach binding on lower courts. *See Berwind Corp.,* 307 F.3d at 234. Justice Stevens' approach does, however, form the "narrowest grounds" in *Shady Grove* because, although he found Rule 23 to conflict with § 901(b) along with the plurality, Justice Stevens' Rules Enabling Act analysis called for an analysis of the state's substantive rights and remedies that was consistent with approach of the four members of the dissent. As Justice Ginsburg explained,

[A] majority of this Court, it bears emphasis, agrees that Federal Rules should be read with moderation in diversity suits to accommodate important state concerns.

*Shady Grove,* 130 S.Ct. at 1464 n. 2 (Ginsburg, J. dissenting). Taken together, the five justices in the concurrence and the dissent concluded that the validity of Federal Rules of Civil Procedure turns, in part, on the rights afforded by the state rule that the Federal Rule displaces. *Id.; Shady Grove,* 130 S.Ct. at 1449 (Stevens, J. concurring). A majority of the Court, accordingly, rejected Justice Scalia's Rules Enabling Act analysis that only examines the Federal Rule on its own in favor of an analysis that considers important state interests.

Lower courts have also concluded that Justice Stevens' Rules Enabling Analysis in *Shady Grove* is controlling. *See McKinney v. Bayer Corp.,* No. 10–224, 744 F.Supp.2d 733, 746–47, 2010 WL 3834327, at *10, 2010 U.S. Dist. LEXIS 103516, at *29 (N.D.Ohio Sept. 30, 2010); *Bearden v. Honeywell Int'l, Inc.,* No. 09–1035, 2010 WL 3239285, at *10, 2010 U.S. Dist. LEXIS 83996, at *30 (M.D.Tenn. Aug. 16, 2010); *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.,* No. 08–65000, 2010 WL 2756947, at *1–3, 2010 U.S. Dist. LEXIS 69254, at *6–8 (N.D.Ohio July 12, 2010).

III. *Analysis*

█ The plaintiffs seek to amend their complaint to add antitrust claims un-

der New York and Illinois state law. Both statutes at issue here are *"Illinois Brick* repealers."[1] Pursuant to the Federal Rules of Civil Procedure, a party may amend its pleading either with the opposing party's written consent or the court's leave. Fed.R.Civ.P. 15(a)(2). A court should freely give leave when justice so requires. *Id.* Such leave should be granted in the absence of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The defendants argue that amendment would be futile because the Illinois and New York class action restrictions survive *Shady Grove.* In the alternative, the defendants argue that amendment would result in unfair prejudice.

## A. *Illinois Claims*

The Illinois Antitrust Act ("IAA") provides for an indirect purchaser cause of action. 740 Ill. Comp. Stat. 10/7(2) ("Any person who has been injured ... by a violation of Section 3 of this Act may maintain an action in the Circuit Court for damages.... No provision of this Act shall deny any person who is an indirect purchaser the right to sue for damages.") The Illinois legislature, however, has enacted two important limitations in the same provision that creates the substantive right. After noting that "[n]o provision of this Act shall deny any person who is an indirect purchaser the right to sue

for damages," the legislature explicitly requires that indirect purchaser suits must be brought by the Illinois Attorney General and further requires that "the court shall take all steps necessary to avoid duplicate liability" in cases where actions are brought by direct and indirect purchasers.

> Provided further that no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action parens patriae as provided in this subsection.

740 Ill. Comp. Stat. 10/7(2).

The plaintiffs argue that the indirect purchaser restrictions only apply to a class action brought "in a court of this State [Illinois]" and not to an action brought in a court outside of Illinois. *Id.* Courts outside of Illinois, however, have read the attorney general restriction to apply to bar indirect purchaser actions in federal court. *See, e.g., In re Flonase Antitrust Litig.,* 692 F.Supp.2d 524, 539 (E.D.Pa.2010). In addition, the State legislature created the substantive right in terms of Illinois courts as well. A person who has been injured "for a violation of Section 3 of this Act [740 ILCS 10/3] may maintain an action in the Circuit Court for damages...." 740 Ill. Comp. Stat. 10/7(2). It would be inconsistent to read these provisions together and conclude that the substantive right is intended to be enforceable in courts outside of Illinois, but not the accompanying restrictions.[2]

---

**1.** In *Illinois Brick,* the Supreme Court prohibited federal antitrust suits by indirect purchasers. *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 728, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Following *Illinois Brick,* a number of states including Illinois and New York passed so-called *"Illinois Brick* repealers," which established the right of an indirect purchaser to

bring an antitrust claim under state law. *See, e.g.,* Jonathan T. Tomlin & Dale J. Giali, *Federalism And The Indirect Purchaser Mess,* 11 George Mason L.Rev. 157, 161 (2002).

**2.** Class actions for indirect purchasers that are not brought by the Attorney General within Illinois are also dismissed. *See, e.g., Gae-*

It is also notable that the limitations on indirect purchaser actions in the IAA were enacted in the same paragraph of the same statute as the state-created right and are accompanied by other substantive limitations. 740 Ill. Comp. Stat. 10/7(2). In addition, the limitations imposed by the Illinois legislature on indirect purchaser actions do not by their terms apply to non-Illinois sources, but rather the limitations apply specifically to indirect purchaser actions brought pursuant to a violation of Section 3 of the IAA. The statute provides: "Any person who has been injured . . . by a violation of Section 3 of this Act may maintain an action . . ." subject to the limitations imposed upon indirect purchasers. 740 Ill. Comp. Stat. 10/7 (2).

Furthermore, courts have observed that the Illinois statute represents a policy judgment as to the feasibility of managing duplicative recovery, which the legislature has entrusted to the Attorney General but not to individual indirect purchasers. *See, e.g., Ill., ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1480 (7th Cir.1991) ("Illinois law does permit indirect purchaser suits while federal law does not, but that difference reflects different judgments about the feasibility of trying such claims and the potential danger of duplicative recoveries. . . .").

Courts that have addressed similar restrictions under Ohio and Tennessee law have concluded that the restrictions survive *Shady Grove. See McKinney v. Bayer Corp.*, No. 10–224, 744 F.Supp.2d 733, 745–47, 2010 WL 3834327, at *9–10, 2010 U.S. Dist. LEXIS 103516, at *27 (N.D.Ohio Sept. 30, 2010) (applying enhanced pleading requirements in the Ohio Consumer Sales Practice Act because the provision is not "pan-substantive"); *Bear-*

*den v. Honeywell Int'l, Inc.*, No. 09–1035, 2010 WL 3239285, at *10, 2010 U.S. Dist. LEXIS 83996, at *30 (M.D.Tenn. Aug. 16, 2010) (applying the Tennessee Consumer Protection Act that included the restriction "individually" in the terms of the substantive statute); *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, No. 08–65000, 2010 WL 2756947, at *1–3, 2010 U.S. Dist. LEXIS 69254, at *6–8 (N.D.Ohio July 12, 2010).

██ The Court concludes that the IAA's restrictions on indirect purchaser actions are distinguishable from the provisions addressed in *Shady Grove.* The Illinois restrictions on indirect purchaser actions are intertwined with Illinois substantive rights and remedies because (1) the restrictions apply only to the IAA, (2) they are incorporated in the same statutory provision as the underlying right, not a separate procedural rule, and (3) the restrictions appear to reflect a policy judgment about managing the danger of duplicative recoveries. Because the indirect purchaser restrictions of the IAA are "intertwined" with the underlying substantive right, application of Rule 23 would "abridge, enlarge or modify" Illinois' substantive rights, and therefore Illinois' restrictions on indirect purchaser actions must be applied in federal court. The Court will therefore deny the indirect purchaser plaintiffs' motion to amend their complaint to include claims under the IAA.

### B. *New York Claims*

The plaintiffs also seek to amend their complaint to include claims under the Donnelly Act, N.Y. Gen. Bus. Law § 340, *et seq.* Section 340(5) provides that a suc-

bler v. N.M. Potash Corp., 285 Ill.App.3d 542, 221 Ill.Dec. 707, 676 N.E.2d 228, 230 (Ill. App.Ct.1996); Bobrowicz v. City of Chi., 168

Ill.App.3d 227, 119 Ill.Dec. 1, 522 N.E.2d 663, 669 (Ill.App.Ct.1988).

cessful antitrust plaintiff "shall recover three-fold the actual damages sustained thereby, as well as costs not exceeding ten thousand dollars, and reasonable attorneys' fees." The Donnelly Act does not address private class actions, although N.Y. Civ. Prac. Law § 901(b), which the New York Legislature enacted in 1975, provides a limitation on the availability of class actions. Section 901(b) provides: "Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action."

Biovail argues that § 901(b) is a substantive element in New York's Donnelly Act, even though it is not, according to the Supreme Court, a substantive element of N.Y. Ins. Law § 5106(a). Biovail also argues that the "duplicate liability" provision in the Donnelly Act also prevents an indirect purchaser class action. N.Y. Gen. Bus. Law § 340(6). The Court notes that Biovail, in its papers and at oral argument, made a strong argument for the distinction that the Donnelly Act was passed in the statutory context of § 901(b) and that a limitation on class actions within the text of the Donnelly Act would have been redundant. Biovail thus concludes that § 901(b) is "intertwined" with § 340 and must be applied to bar the indirect purchasers' class action seeking treble damages.

The Court of Appeals for New York has specifically noted that the legislature began to amend the Donnelly Act "within weeks" of the passage of § 901.

Within weeks of passage of the class action statute, the Legislature undertook to amend the Donnelly Act.

. . .

It is notable that the Legislature added the treble damages provision to the Donnelly Act shortly after having adopted CPLR 901(b). Clearly, the Legislature was aware of the requirement of making express provision for a class action when drafting penalty statutes, and could have included such authorization in General Business Law § 340.

*Sperry v. Crompton Corp.,* 8 N.Y.3d 204, 831 N.Y.S.2d 760, 863 N.E.2d 1012, 1015, 1017 (2007). In *Sperry,* the New York Court of Appeals concluded that class actions could not be brought in New York to seek treble damages under the Donnelly Act because such damages are "penalties." *Id.* at 1013.

In addition, the New York legislature has considered and rejected legislation that would authorize class actions for antitrust treble damages prior to § 901(b), during the consideration of § 901(b), and after the enactment of § 901(b). In *Sperry,* the Court of Appeals reviewed this legislative history and noted that the legislature had several times contemplated adding class action authorization for antitrust treble damages.

In 1973 and 1974, bills died in committee that would have permitted class actions for the recovery of treble damages (see 1973 N.Y. Senate–Assembly Bill S 3544, A 4832; 1974 N.Y. Senate–Assembly S 3544, A 4832). Similarly, in 1975, while the Legislature was considering the treble damages bill that was eventually enacted, a separate proposal (1975 N.Y. Assembly Bill A 1215) would have expressly permitted class actions. More recently, bills to amend the Donnelly Act to create a class action provision in General Business Law § 340(7) have been considered a number of times (see 2002 N.Y. Assembly Bill A 11124; 2003 N.Y. Assembly Bill A 5158; 2005 N.Y.

Assembly Bill A 663). The same proposal is currently pending (see 2007 N.Y. Assembly Bill A 396). Under the proposed amendment, General Business Law § 340(7) would provide: "Any damages recoverable pursuant to this section may be recovered in any action which a court may authorize to be brought as a class action pursuant to article nine of the civil practice law and rules." *Sperry*, 863 N.E.2d at 1017 n. 8. Biovail concludes that § 340 implicitly incorporates the procedural provision and notes that the "only meaningful difference between the Donnelly Act and the IAA is that the latter includes a specific class action ban within the antitrust statute itself, while the Donnelly Act does not. The reason for that difference, however, is obvious—there was no need to include a class action ban in the Donnelly Act itself because Section 901(b) already existed when New York's indirect purchaser cause of action was enacted." Opp'n at 11–12.

Biovail's arguments, however, are undermined by Justice Stevens' focus on the text of § 901(b) itself. Justice Stevens emphasized that § 901(b) applies to all sources of law, and it is therefore difficult to see how § 901(b) defines New York's rights.

> The text of CPLR § 901(b) expressly and unambiguously applies not only to claims based on New York law but also to claims based on federal law or the law of any other State. And there is no interpretation from New York courts to the contrary. It is therefore hard to see how § 901(b) could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies.

*Shady Grove*, 130 S.Ct. at 1457 (Stevens, J. concurring). Likewise, Biovail's argument that a class action prohibition within the text of § 340 would have been redundant ignores the majority reasoning that emphasizes the plain text of the statute. The statute that the New York legislature "could have [ ] written" has "no bearing." *Shady Grove*, 130 S.Ct. at 1440 (majority opinion) (citations and footnotes omitted).

Courts have also treated *Shady Grove* as a general preemption of § 901(b). *See Holster v. Gatco, Inc.,* —— U.S. ——, 130 S.Ct. 1575, 1575, 176 L.Ed.2d 716 (2010) (Scalia, J. concurring) ("*Shady Grove* [ ] held that, irrespective of *Erie* [*R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ] § 901(b) does not apply to state-law claims in federal court because it is validly pre-empted by Rule 23."). The Court of Appeals for the Second Circuit has also noted that *Shady Grove* applies "in general" to claims filed under the Class Action Fairness Act in federal courts; if the requirements of federal jurisdiction exist and Rule 23 is met, § 901(b) is "irrelevant." *Holster v. Gatco, Inc.,* 618 F.3d 214, 216–17 (2d Cir.2010) (Calabresi, J.) (distinguishing the federal Telephone Consumer Protection Act action, 47 U.S.C. § 227, which calls for the application of state law).

Lower courts have likewise concluded that § 901(b) does not survive after *Shady Grove* as applied to the Donnelly Act and other New York provisions. The United States District Court for the Northern District of California allowed a similar amendment to assert claims under the Donnelly Act. *See In re Static Random Access Memory (SRAM) Antitrust Litig.,* 2010 WL 3069329, at \*1–3, 2010 U.S. Dist. LEXIS 97398, at \*30–33 (N.D.Cal. Aug. 4, 2010). In the Wellbutrin SR litigation, Judge Stengel briefly addressed the issue and concluded that the New York antitrust claim would survive under *Shady Grove*, but should be dismissed the because the requisite conspiracy was not alleged. *In re Wellbutrin SR*, 2010 U.S. Dist. LEXIS

93520, at *34–36 (E.D.Pa. Sept. 7, 2010). *See also Pefanis v. Westway Diner, Inc.*, No. 08–002, 2010 WL 3564426, at *6, 2010 U.S. Dist. LEXIS 93180, at *19 (S.D.N.Y. Sept. 7, 2010) (allowing amendment for liquidated damages under the New York Labor Law).

Biovail further argues that indirect and direct purchaser actions may not be maintained under the Donnelly Act because the Act mandates that courts take "all steps necessary to avoid duplicate liability. . . ." N.Y. Gen. Bus. Law § 340(6).[3] The text of § 340(6) provides in part: "In any action pursuant to this section . . . the court shall take all steps necessary to avoid duplicate liability, including but not limited to the transfer and consolidation of all related actions." Based on a plain reading of the statute's text, it is not clear that the statute conceives of direct federal liability as duplicative with indirect state liability.[4]

In support of this argument, Biovail cites to a Supreme Court of New York case and a U.S. District Court for the District of Washington D.C. case. *Ho v. Visa U.S.A., Inc.*, 2004 WL 1118534, 2004 N.Y. Misc. LEXIS 577 (Sup.Ct.2004); *In re Vitamins Antitrust Litig.*, 120 F.Supp.2d 58 (D.D.C.2000). Notably, *Ho* did not construe the scope of § 340(6), but concluded that the plaintiffs should not recover because their injuries were too remote for several reasons including the fact that there had already been a settlement involving parties more directly af-

fected. *See Ho*, 2004 WL 1118534, at *2–3, 2004 N.Y. Misc. LEXIS 577, at *3. In *In re Vitamins Antitrust Litigation*, the Court concluded that § 340(6) would increase defendants' liability and thus should not be given retroactive application. *See In re Vitamins Antitrust Litig.*, 120 F.Supp.2d 58, 72 n. 9 (D.D.C.2000) (noting that the only way to avoid "duplicative recovery" would be to deny indirect purchasers any overcharge damages at all).

■ Given the textual ambiguity of the "duplicative recovery" provision as well as the lack of clear pronouncement from New York courts to the contrary, the Court is unwilling to conclude at this stage that § 340(6) acts to bar indirect purchaser liability where there is pending direct purchaser federal litigation. The Court also concludes that New York's § 901(b) and § 340 are distinguishable from the IAA's restrictions not merely because New York's limitation is in a separate procedural provision, but also because § 901(b) does not define state-created rights because it applies to all sources of law.

## C. *Prejudice*

■ In the alternative, the defendants argue that they would be unfairly prejudiced if the plaintiffs are permitted to amend their complaint. There is a general presumption in favor of allowing a party to amend pleadings. *See Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d

---

**3.** The defendants also argue that such claims cannot survive the "rigorous" scrutiny under Rule 23's predominance requirement. Biovail's Opp'n at 10 citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir.2008). This argument is premature at this stage. It may be raised in connection with the pending motion for class certification.

**4.** For a discussion of the ambiguity of "duplicative recovery" provisions including New

York's § 340(6), *see* Robert H. Lande, *New Options for State Indirect Purchaser Legislation: Protecting the Real Victims of Antitrust Violations*, 61 Ala. L.Rev. 447, 454 n. 40 (2010) ("There are several state statutes that preclude duplicative recovery, but it is difficult to determine whether they are worried about duplication solely on the state level, or duplication between the state and federal levels.")

Cir.1984). Undue prejudice, however, is the "touchstone" for denial of an amendment. *See Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989). *See also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003) ("Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."). To successfully oppose the plaintiffs' motion, the defendants must "demonstrate that [their] ability to present [their] case would be seriously impaired were amendment allowed." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir.1990).

 Amendment to a complaint is a matter within the district court's discretion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The burden is on the nonmoving party to establish prejudice and the burden is high. The defendants ability to present their case must be "seriously impaired." *Dole*, 921 F.2d at 488. The nonmoving party has a heavier burden than merely claiming prejudice, it must show that an unfair disadvantage or deprivation will result by allowing the amendment. *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous., Inc.*, 663 F.2d 419, 426 (3d Cir.1981).

The defendants argue that amendment would prejudice them because it would require significant additional discovery, rebriefing of dispositive motions, and require "substantial reworking" of draft briefs. As a practical matter, the defendants also fear that the plaintiffs will use these additional claims for leverage to settle without the defendants being afforded a chance to test the strength of those claims through a motion to dismiss or via class certification. GSK's Opp'n at 4–5 (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir.2008)).

The plaintiffs argue that additional work is mitigated because they have already produced to the defendants data reflecting payments in New York and Illinois. "Plaintiffs are hard-pressed to identify any other class certification discovery Defendants would need beyond that already produced." Reply at 13–14.

 The Court finds that the defendants have not shown enough prejudice to warrant denial of the plaintiffs' motion to amend. The U.S. District Court for the Northern District of California, addressing amendment under *Shady Grove* to allow a Donnelly Act claim, concluded that there would be no prejudice despite being even further along in that litigation than the parties are in this litigation. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 3069329, *2, 2010 U.S. Dist. LEXIS 97398, *31 (N.D.Cal. Aug. 4, 2010). In *In re SRAM*, fact and expert discovery closed on December 11, 2009 and July 9, 2010 and the defendants had already filed motions for summary judgment. A two-month trial was set to begin on January 31, 2011, and the Court decided the motion on August 4, 2010. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 3069329, *2, 2010 U.S. Dist. LEXIS 97398, *31 (N.D.Cal. Aug. 4, 2010). Despite this advanced stage of litigation, the Court denied the defendants' motion. *Id. See also Pefanis v. Westway Diner, Inc.*, 2010 WL 3564426, at *6–7, 2010 U.S. Dist. LEXIS 93180, at *20–21 (S.D.N.Y. Sept. 7, 2010) (allowing for amendment in light of *Shady Grove*); *In re Bristol–Myers Squibb Secs. Litig.*, 228 F.R.D. 221, 228 (D.N.J.2005) (motion to amend denied after four and a half years of discovery); *Cureton v. NCAA*, 252 F.3d 267, 273–74 (3d Cir.2001) (motion to amend denied where factual information had been known for two and a

half years and case had already been tried).

In this case, the motion to amend was filed a month after the case was removed from suspense. In addition, the defendants' opposition to class certification is not due until January 28, 2011. Given the stage of discovery, and the fact that the defendants have not yet filed their oppositions to class certification, the Court concludes that amendment to include claims under New York's Donnelly Act would not unfairly prejudice the defendants.

An appropriate order follows separately.

### ORDER

AND NOW, this 21st day of December, 2010, upon consideration of the indirect purchaser plaintiffs' Motion for Leave to File an Amendment to their First Amended Consolidated Class Action Complaint (Docket No. 196), the opposition, reply, and sur-reply thereto, oral argument on December 14, 2010, and for the reasons stated in a memorandum of today's date, IT IS HEREBY ORDERED that said motion is GRANTED IN PART AND DENIED IN PART as follows:

1. The plaintiffs are GRANTED leave to amend their complaint to assert claims under New York's Donnelly Act, N.Y. Gen. Bus. Law § 340, *et seq.*

2. The plaintiffs are DENIED leave to amend their complaint to assert claims under the Illinois Antitrust Act, 740 Ill. Comp. Stat. 10/1, *et seq.*

3. The plaintiffs' second amended complaint shall be due to the Court on or before January 7, 2011.